FILED
COURT OF APPEALS
DIVISION II

2013 NOV -5 AM 8: 57

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>             Respondent.<br><br>v.<br><br>NICHOLAS M. HIGGS,<br><br>             Appellant. | No. 43097-5-II<br><br>ORDER GRANTING MOTION TO MODIFY<br>AND AMENDING OPINION |

Nicholas Higgs has filed a motion to modify our opinion previously filed in this case on October 29, 2013. Granting this motion, we hereby amend the opinion as follows:

On page 1, lines 2-3, delete "with intent to manufacture or deliver".

On page 4, delete the last sentence, which currently reads:

"The jury convicted Higgs on all four drug counts, and he appeals."

And replace this sentence with the following new sentence and new footnote number 2:

The jury found Higgs guilty of two counts of unlawful possession of a controlled substance (methamphetamine and amphetamine[2]), use of drug paraphernalia, and unlawful delivery of a controlled substance (amphetamine).

---

[2] For the unlawful delivery of a controlled substance (amphetamine) with intent to manufacture or deliver charge, the jury found Higgs guilty of the lesser included offense of unlawful possession of a controlled substance.

No. 43097-5-II

Subsequent footnotes are consequently renumbered.

Accordingly, it is

**SO ORDERED.**

DATED this 5th day of November, 2013.

MAXA, J.

We concur:

WORSWICK, C. J.

HUNT, J.

2

FILED
COURT OF APPEALS
DIVISION II

2013 OCT 29 AM 9: 46

STATE OF WASHINGTON

BY_____
          DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

STATE OF WASHINGTON,

                       Respondent.

      v.

NICHOLAS M. HIGGS,

                      Appellant.

No. 43097-5-II

PUBLISHED OPINION

MAXA, J. — Nicholas Higgs appeals his convictions for unlawful possession of a controlled substance (methamphetamine), unlawful possession of a controlled substance with intent to manufacture or deliver (amphetamine), use of drug paraphernalia, and unlawful delivery of a controlled substance (amphetamine). He argues that (1) the warrant under which law enforcement officers seized evidence during a search of his residence was overbroad because most of its portions were not supported by probable cause, (2) his trial counsel was ineffective for failing to assert the overbroad warrant as a basis for his motion to suppress the seized evidence, and (3) evidence of methamphetamine residue found during the search was insufficient to support his unlawful possession of methamphetamine conviction.

Although the State concedes that portions of the warrant were overbroad, we consider this issue only in the context of ineffective assistance of counsel because Higgs asserts overbreadth for the first time on appeal. We hold that Higgs's counsel was not ineffective

because (1) the warrant's portions supported by probable cause can be severed from the overbroad portions and therefore the trial court likely would have denied a motion to suppress the drug evidence seized under the valid portion of the warrant, and (2) Higgs cannot show that the admission of the evidence seized under the invalid portion of the warrant prejudiced him. And because the unlawful possession statute does not require a minimum quantity of a controlled substance to support a conviction, we hold that the evidence of methamphetamine residue found in Higgs's residence was sufficient to support his unlawful possession of methamphetamine conviction. We affirm Higgs's convictions.

## FACTS

A woman told law enforcement officers that she had observed drugs in Higgs's home, and one of the officers applied for a search warrant. The search warrant affidavit stated that the informant told officers (1) she had observed Higgs fill a light bulb with a crystalline substance and smoke the substance from the light bulb by holding a lighter to the bottom of the bulb and melting the substance; (2)she then observed him use an empty pen shaft to transfer more crystalline substance from a small plastic baggie to the bulb and smoke from it at least three times; and (3) she recognized the substance to be methamphetamine because she used to smoke it.

The district court issued a warrant to search Higgs's residence for methamphetamine, as well as for items used in its distribution and packaging and for records related to a "distribution

No. 43097-5-II

operation".[1] Suppl. Clerk's Papers (CP) at 73-75. The officers executed the search warrant and

seized a baggie containing methamphetamine residue, a light bulb smoking device with a pen

---

[1] The warrant authorized a search of Higgs's residence for the following items:
(1) Methamphetamine, a substance controlled by the Uniform Controlled Substances Act of the State of Washington, and items used to facilitate the distribution and packaging of Methamphetamine;
(2) Records relating to the transportation, ordering, manufacturing, possession, sale, transfer and/or importation of controlled substances in particular, Methamphetamine, including but not limited to books, notebooks, ledgers, check book ledgers, handwritten notes, journals, calendars, receipts, electronic recording media, and the like;
(3) Records showing the identity of co-conspirators in this distribution operation, including but not limited to address and/or phone books, telephone bills, Rolodex indices, notebooks, ledgers, check book ledgers, handwritten notes, journals, calendars, receipts, electronic recording media, an[d] the like;
(4) Records which will indicate profits and/or proceeds of the illegal distribution operation of Methamphetamine, to include, but not limited to books, notebooks, ledgers, check book ledgers, handwritten notes, journals, calendars, receipts, electronic recording media, and the like;
(5) Books, records, invoices, receipts, records of real estate transactions, purchase, lease or rental agreements, utility and telephone bills, records reflecting ownership of motor vehicles, keys to vehicles, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, pay stubs, tax statements, cashiers checks, bank checks, safe deposit box keys, money wrappers, and other items evidencing the obtaining, secreting, transfer, concealment, and/or expenditure of money and/or dominion and control over assets and proceeds;
(6) Photographs, including still photos, negatives, video tapes, films, undeveloped film and the contents therein, and slides, in particular, photographs of co-conspirators, of assets, and controlled substances, in particular Methamphetamine[;]
(7) Currency, precious metals, jewelry, and financial instruments, including stocks and bonds for the purpose of tracking proceeds and/or profits;
(8) Address and/or telephone books, telephone bills, Rolodex indices and papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers and/or telex number of sources of supply, customers, financial institution, and other individual[s] or businesses with whom a financial relationship exists;
(9) Correspondence, papers, records, and any other items showing employment or lack of employment of defendant or reflecting income or expenses, including but not limited to items listed in paragraph 5, financial statements, credit card records, receipts, and income tax returns;

3

straw containing methamphetamine residue, a bottle of amphetamine pills, a rental agreement showing the home was rented to Higgs, a department of licensing document belonging to Higgs, and Higgs's driver's license. The State charged Higgs with unlawful possession of a controlled substance (methamphetamine) (RCW 69.50.4013), unlawful possession of a controlled substance with intent to manufacture or deliver (amphetamine) (RCW 69.50.401(1)), use of drug paraphernalia (RCW 69.50.412(1)), and unlawful delivery of a controlled substance (amphetamine) (RCW 69.50.401(1)).

Higgs moved to suppress the items seized from his residence under the warrant. He argued that probable cause did not support the warrant because the informant's reliability was unproven and because she did not have an adequate basis for her knowledge of the items to be found in Higgs's residence. Higgs did not argue at that time that the warrant was overbroad. The trial court denied the motion. The jury convicted Higgs on all four drug counts, and he appeals.

---

(10) Paraphernalia for packaging, weighing and distributing Methamphetamine, including but not limited to scales, baggies, and other items used in the distribution operation, including firearms;

(11) Electronic equipment, such as computers, telex machines, facsimile machines, currency counting machines, telephone answering machines, and related manuals used to generate, transfer, count, record and/or store the information described above. Additionally, computer software, tape and discs, audio tapes, electronic recording media, and the contents therein, containing the information generated by the aforementioned electronic equipment; and communications devices, including pagers and mobile telephones[;]

(12) Photographs of the crime scene and to develop any photographs taken of the crime scene, including still photos and video cassette recordings and to develop any undeveloped film located at the residence.

Suppl. CP at 73-75.

## ANALYSIS

### A.    OVERBREADTH ARGUMENT MADE FOR FIRST TIME ON APPEAL

Higgs argues that we should reverse his convictions because the evidence used to convict him was obtained under an overbroad search warrant. However, at the suppression hearing he argued only that the warrant was not supported by probable cause because ARH's reliability as an informant was unproven and because she did not have an adequate basis for her knowledge. Higgs now argues for the first time on appeal that the evidence found in his home should have been suppressed because it was seized under an overbroad warrant.

RAP 2.5(a) states that "[t]he appellate court may refuse to review any claim of error which was not raised in the trial court". The purpose underlying issue preservation rules is to encourage the efficient use of judicial resources by ensuring that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals. *State v. Robinson*, 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011). Higgs objected to admission of the seized evidence below, but not on the ground that the search warrant was overbroad. Even if a defendant objects to the introduction of evidence at trial, he/she "may assign evidentiary error on appeal only on a specific ground made at trial". *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007)). Accordingly, Higgs failed to preserve his overbreadth claim for our review, and we do not consider it.

Although RAP 2.5(a) generally precludes this court's review of an unpreserved claim in the trial court, the rule states that a party may raise particular types of errors for the first time on appeal. One of the exceptions is RAP 2.5(a)(3), which allows review of "manifest error affecting a constitutional right". But Higgs fails to argue that any of the exceptions listed in RAP 2.5(a)

apply. Instead, he argues only that his counsel was ineffective for failing to raise the overbreadth argument below. Therefore, we do not address any of the exceptions to RAP 2.5(a).

B.     INEFFECTIVE ASSISTANCE OF COUNSEL

Higgs argues that his counsel was ineffective for failing to argue at the suppression hearing that the warrant was overbroad, and that he was prejudiced as a result. We disagree. Because the trial court probably would not have suppressed the evidence seized under the valid part of the warrant, we hold that Higgs cannot show that his counsel's failure to make an overbreadth argument prejudiced him.

1.     Test for Ineffective Assistance

To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). The failure to show either element ends our inquiry. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996), *overruled on other grounds by Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006). Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have been different. *Grier*, 171 Wn.2d at 34. We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

Here, the State concedes that there was no probable cause for much of the search warrant, and essentially concedes that trial counsel should have argued at the suppression hearing that the

warrant was overbroad. Therefore, we address whether the failure to make this argument prejudiced Higgs.

2. Prejudice

In order to establish actual prejudice here, Higgs must show that the trial court likely would have granted a motion to suppress the seized evidence on overbreadth grounds. *See State v. McFarland*, 127 Wn.2d 322, 337 n. 4, 899 P.2d 1251 (1995). Accordingly, we address whether the search warrant was overbroad and if so, whether the valid portions can be severed.

a. Probable Cause Requirement

The Fourth Amendment to the U.S. Constitution provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." This amendment was designed to prohibit "general searches" and to prevent " 'general, exploratory rummaging in a person's belongings.' " *State v. Perrone*, 119 Wn.2d 538, 545, 834 P.2d 611 (1992) (internal quotation marks omitted) (quoting *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S. Ct. 2737, 49 L. Ed. 2d 627 (1976)). Similarly, article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law."

These constitutional provisions impose two requirements for search warrants that are "closely intertwined". *Perrone*, 119 Wn.2d at 545. First, a warrant can be issued only if supported by probable cause. *State v. Lyons*, 174 Wn.2d 354, 359, 275 P.3d 314 (2012). "Probable cause exists if the affidavit in support of the warrant sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched." *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). Probable cause requires a nexus both between

criminal activity and the item to be seized and between the item to be seized and the place to be searched. *Thein*, 138 Wn.2d at 140.

Second, "a search warrant must be sufficiently definite so that the officer executing the warrant can identify the property sought with reasonable certainty." *State v. Stenson*, 132 Wn.2d 668, 692, 940 P.2d 1239 (1997). The required degree of specificity "varies according to the circumstances and the type of items involved." *Stenson*, 132 Wn.2d at 692. The particularity requirement serves the dual functions of "limit[ing] the executing officer's discretion" and "inform[ing] the person subject to the search what items may be seized." *State v. Riley*, 121 Wn.2d 22, 29, 846 P.2d 1365 (1993).

A warrant is "overbroad" if either requirement is not satisfied. *State v. Maddox*, 116 Wn. App. 796, 805, 67 P.3d 1135 (2003), *aff'd*, 152 Wn.2d 499, 98 P.3d 1199 (2004). Therefore, a warrant can be overbroad "either because it fails to describe with particularity items for which probable cause exists, or because it describes, particularly or otherwise, items for which probable cause does not exist." *Maddox*, 116 Wn. App. at 805 (footnote omitted). Further, a warrant will be found overbroad if some portions are supported by probable cause and other portions are not. *Maddox*, 116 Wn. App. at 806.

We review the trial court's probable cause and particularity determinations de novo, giving deference to the magistrate's determination. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). We evaluate search warrants in a common sense, practical manner and not in a hypertechnical sense. *Perrone*, 119 Wn.2d 549.

b.    Probable Cause for Higgs's Warrant

Higgs argues that the search warrant was overbroad because the officer's affidavit did not establish probable cause to search for any of the items listed in the warrant except methamphetamine and photographs of the crime scene. Most of the challenged paragraphs related to methamphetamine distribution. The State concedes that the warrant paragraphs involving distribution were not supported by probable cause.

The informant's statement that she observed Higgs smoking a white crystalline substance was sufficient for a reasonable person to conclude that Higgs possessed methamphetamine and that evidence of that possession could be found at his residence. The first part of paragraph 1 and paragraph 12 of the warrant clearly relate to methamphetamine possession. We hold that these parts of the warrant were supported by probable cause.

On the other hand, the majority of the remaining items listed in the warrant related to the *distribution* of a controlled substance. Moreover, some of the items listed in the warrant were not related to either possession or distribution. For example, the warrant authorizes the State to seize "[c]urrency, precious metals, jewelry, and financial instruments, including stocks and bonds for the purpose of tracking proceeds and/or profits" but did not limit the items to those related to methamphetamine distribution. Suppl. CP at 74.    Paragraphs 2-4 and 6-11 related only to methamphetamine distribution or have nothing to do with possession of a controlled substance. We hold that these paragraphs were not supported by probable cause.[2]

---

[2] Higgs also argues that the warrant was insufficiently particular because it authorized a search for items protected by the First Amendment of the U.S. Constitution without meeting the heightened particularity standard for those items. Because we hold that the remaining items in the warrant were not supported by probable cause because they did not relate to the possession of methamphetamine, we need not address this argument.

9

The parties disagree on two portions of the search warrant. First, the State argues that the warrant's authorization in the second part of paragraph 1 to search for " 'items used to facilitate the distribution and packaging of Methamphetamine' " was supported by probable cause. Br. of Resp't at 14 (quoting Suppl. CP at 73). The State relies on the portion of the warrant affidavit stating that based on the officer's training and experience "persons involved in the distribution of controlled substances almost always use packaging material including plastic baggies to hold the controlled substances, repackage it in smaller quantities utilizing scales to sell to individual users and these packaging materials will be found at the same location as the controlled substances." Suppl. CP at 63. However, the officer's statement refers only to "persons involved in the *distribution* of controlled substances." Suppl. CP at 63 (emphasis added). Because the affidavit provided no evidence that Higgs was distributing methamphetamine, we hold that probable cause did not support a search for items used in the distribution of methamphetamine.

Nevertheless, items used in the packaging of a controlled substance may be related to the possession of that substance, as well as to distribution. *Cf. State v. Davis*, 79 Wn. App. 591, 595-96, 904 P.2d 306 (1995) (marijuana packaging is not inconsistent with personal use). We hold that probable cause did support a search for items used to facilitate packaging.

Second, the State argues that probable cause supported the warrant's authorization in paragraph 5 to search for various records because these records involved possession and control over the premises. Paragraph 5 authorized a search for:

> Books, records, invoices, receipts, records of real estate transactions, purchase, lease or rental agreements, utility and telephone bills, records reflecting ownership of motor vehicles, keys to vehicles, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, pay stubs, tax statements, cashiers checks, bank checks, safe deposit box keys, money wrappers, and other items evidencing the obtaining, secreting, transfer,

concealment, and/or expenditure of money and/or dominion and control over assets and proceeds.

Suppl. CP at 74. The rental agreement, the department of licensing document, and the driver's license were seized pursuant to this paragraph.

Generally, probable cause supports a warrant authorizing a search for evidence of dominion and control over premises where contraband is found. *See State v. Weaver*, 38 Wn. App. 17, 19, 683 P.2d 1136 (1984) (evidence of cardboard box with defendant's name on it was properly seized under warrant because it showed dominion and control over premises). Many (but not all)[3] of the items in paragraph 5 could constitute evidence of dominion and control over the premises. However, this paragraph did not expressly refer to evidence of dominion and control of the *premises*. Instead, the list of items precedes a statement authorizing a search for "other items evidencing the obtaining, secreting, transfer, concealment, and/or expenditure of money and/or dominion and control *over assets and proceeds.*" Suppl. CP at 74 (emphasis added). When read as a whole, paragraph 5 authorizes a search for evidence in conjunction with the distribution of controlled substances. Even if some of the items could relate to dominion and control of the premises, we will not engage in "extensive editing" of a warrant clause to identify potentially valid parts. *Perrone*, 119 Wn.2d at 560 (internal quotation marks omitted). We hold that paragraph 5 was not supported by probable cause, and therefore seizure of the rental agreement, the Department of Licensing document and the driver's license was improper.

    c.   Severability Doctrine

The State contends that even though parts of the search warrant were overbroad, the trial court probably would have severed any items seized under the lawful part of the warrant from

---

[3] Other items such as "safe deposit box keys" and "money wrappers" were unrelated to dominion and control. Suppl. CP at 74.

those obtained unlawfully and therefore would have denied the motion to suppress those items. We agree.

Even if a search warrant is overbroad or insufficiently particular, "[u]nder the severability doctrine, 'infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant' but does not require suppression of anything seized pursuant to valid parts of the warrant." *Perrone*, 119 Wn.2d at 556 (quoting *United States v. Fitzgerald*, 724 F.2d 633, 637 (8th Cir.1983)). The doctrine applies when a warrant includes both items that are supported by probable cause and described with particularity and items that are not, as long as a " 'meaningful separation' can be made on 'some logical and reasonable basis.' " *Maddox*, 116 Wn. App. at 806-07 (quoting *Perrone*, 119 Wn.2d at 560). However, we will not apply the severability doctrine "where to do so would render meaningless the standards of particularity which ensure the avoidance of general searches and the controlled exercise of discretion by the executing officer." *Perrone*, 119 Wn.2d at 558.

In *Maddox* we held that the severability doctrine applies only when five requirements are met:

> First, the warrant must lawfully have authorized entry into the premises. . . .
> Second, the warrant must include one or more particularly described items for which there is probable cause. . . .
> Third, the part of the warrant that includes particularly described items supported by probable cause must be significant when compared to the warrant as a whole. . . .
> Fourth, the searching officers must have found and seized the disputed items while executing the valid part of the warrant (i.e., while searching for items supported by probable cause and described with particularity). . . .
> Fifth, the officers must not have conducted a general search, i.e., a search in which they flagrantly disregarded the warrant's scope.

116 Wn. App. at 807-08 (internal quotations omitted).

12

Here, there is no dispute that the warrant lawfully authorized entry into Higgs's residence or that the warrant described at least one item, methamphetamine, for which there was probable cause. *Maddox*, 116 Wn. App. at 807. There also is no indication that the officers conducted a "general search" beyond the scope of the valid part of the warrant. They apparently found all the seized evidence while searching for methamphetamine. The disputed issues involve requirements three and four: whether the valid items were "significant" when compared to the warrant as a whole, and which items were seized while executing the valid part of the warrant.

    i.   "Significant" Part of Warrant

In *Maddox* we emphasized that the portion of the warrant supported by probable cause must be "significant". 116 Wn. App. at 807.

> If most of the warrant purports to authorize a search for items not supported by probable cause or not described with particularity, the warrant is likely to . . . authoriz[e] "a general, exploratory rummaging in a person's belongings[,]" and no part of it will be saved by severance or redaction.

*Maddox*, 116 Wn. App. at 807-08 (third alteration in original) (internal quotation marks omitted) (quoting *Andresen*, 427 U.S. at 480). This requirement derives from *Perrone*, in which our Supreme Court stated that severance is not available when the valid portion of the warrant is a " 'relatively insignificant part of an otherwise invalid search.' " 119 Wn.2d at 557 (internal quotation marks omitted) (quoting *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 858 (9th Cir. 1991)).

There was no probable cause for most of the paragraphs in the warrant here. Focusing only on the number of words or paragraphs in the warrant might suggest that the two paragraphs supported by probable cause were an "insignificant" part. However, the primary purpose of this warrant obviously was to search for methamphetamine. And probable cause supported the

portion of the warrant authorizing the search for methamphetamine. The remaining paragraphs appear to be "boilerplate" clauses that were merely supplemental to the search for methamphetamine. *See Maddox*, 116 Wn. App. at 800 (quoting search warrant terms similar to the warrant in this case).

Application of the "significant part" requirement appears to be a matter of first impression in Washington. A meaningful examination of whether the items supported by probable cause are a significant part of the warrant should not turn on the number of words or paragraphs dedicated to describing those items. Instead, we take a broader approach, and focus on the primary purpose of the warrant in the context of the crime the State sought to investigate. *See Maddox*, 152 Wn.2d at 514 (Alexander, C.J., dissenting) ("methamphetamine was the primary item for which police were searching" and "[t]he other items listed in the warrant were relatively insignificant compared to the drug"). This approach is particularly appropriate here, where the valid part of the warrant already authorized the type of broad search necessary to locate controlled substances in a residence.

Here, it is clear that the search for methamphetamine was the warrant's primary purpose. Authorization for that search was listed first on the warrant, and the other "boilerplate" items were not particularly significant. In addition, because the scope of the warrant's valid portion was so broad, the invalid portion did not expand the scope of the search or subject Higgs to a " 'general, exploratory rummaging' " the probable cause requirement seeks to prevent. *Perrone*, 119 Wn.2d at 545 (internal quotation marks omitted) (quoting *Andresen*, 427 U.S. at 480). Using this approach, we hold that the authorization to search for methamphetamine was a "significant part" of the warrant.

14

ii. Items Seized while Executing Warrant

The fourth *Maddox* requirement is that the State find the "disputed items while executing the valid part of the warrant." 116 Wn. App. at 808. Higgs does not specifically argue what evidence seized under the warrant should have been suppressed. However, the evidence seized in the search was a baggie containing methamphetamine residue, amphetamine pills, a light bulb smoking device with a pen straw containing methamphetamine residue, amphetamine pills, a rental agreement showing the home was rented to Higgs, a department of licensing document belonging to Higgs, and Higgs's driver's license. All of this evidence was admitted at trial.

It is clear that the light bulb smoking device and baggie containing methamphetamine residue were discovered while executing the valid part of the warrant. Probable cause supported the portion of the warrant authorizing a search for methamphetamine and packaging.

In addition, the amphetamine pills, although not identified in the warrant, were discovered while officers executed the valid portion of the warrant. "Officers executing a warrant for [drugs] are authorized to inspect virtually every aspect of the premises." *State v. Chambers*, 88 Wn. App. 640, 645, 945 P.2d 1172 (1997). Therefore, if officers discover items immediately recognizable as contraband not specified in the warrant during their search, those items would be subject to seizure under the plain view doctrine. *State v. Temple*, 170 Wn. App. 156, 164, 285 P.3d 149 (2012). In order for substances to be immediately recognizable as contraband, the officer need not possess certain knowledge that the substance is contraband. *State v. Gonzales*, 46 Wn. App. 388, 400, 731 P.2d 1101 (1986). Rather, the test is whether, "considering the surrounding circumstances, the police can reasonably conclude that the substance before them is incriminating evidence." *State v. Hudson*, 124 Wn.2d 107, 118, 874

P.2d 160 (1994). Evidence of involvement with drugs can provide probable cause to believe that an unidentified substance is a controlled substance. *See Gonzales*, 46 Wn. App. at 400-01.

Here, although the warrant did not authorize a search for amphetamine and although the substance was a prescription drug, the officers discovered the pills in an unlabeled container in Higgs's home where they also discovered methamphetamine. This was sufficient to provide probable cause to believe that the pills were also a controlled substance. *Gonzales*, 46 Wn. App. at 400-01. Accordingly, we hold that they were discovered while executing a valid part of the warrant.

Conversely, while a search for methamphetamine authorized officers to conduct a broad search of the premises, the rental agreement, the department of licensing document, and the driver's license were not contraband. As a result, these items could not be seized under the plain view doctrine. *See Temple*, 170 Wn. App. at 164. We hold that the documents found in Higgs's residence were not seized while executing a valid portion of the warrant. Therefore, this evidence was improperly admitted.

> d. Prejudice of Admitting Improperly Seized Documents

Because the severance doctrine does not allow admission of the documents seized, the trial court likely would have excluded the rental agreement, the department of licensing document, and the driver's license if trial counsel had argued that the warrant was overbroad. But under the test for ineffective assistance of counsel, we still must determine whether admission of this illegally seized evidence prejudiced Higgs.

At trial, Higgs's landlord testified that Higgs rented the house identified in the warrant in August of 2011, and Higgs himself testified that he lived alone at the residence identified in the warrant. And there was no evidence at trial calling into question Higgs's residence at the address

16

stated in the warrant. Accordingly, the information in the seized documents duplicated other evidence presented at trial establishing Higgs's dominion and control over the premises. We hold that Higgs cannot show prejudice from the introduction of this cumulative evidence.

e. Summary

Probable cause existed to search Higgs's residence for methamphetamine and packaging. Because the authorization to search for these items was a significant part of the warrant, this search can be severed from the overbroad parts of the warrant. Therefore, had trial counsel moved to suppress this evidence on the ground that the warrant was overbroad, the trial court probably would not have suppressed evidence seized while executing the search for methamphetamine and packaging; namely, the baggie containing methamphetamine residue, a light bulb smoking device with a pen straw containing methamphetamine residue and amphetamine pills. We hold that trial counsel's failure to raise the overbroad warrant issue did not prejudice Higgs with regard to this evidence.

The rental agreement, department of licensing document, and driver's license were not seized while executing a valid part of the warrant. Accordingly, it is likely that the trial court would have granted a motion to suppress that evidence. However, although this evidence likely would not have been admitted if Higgs's attorney had moved to exclude it, Higgs was not prejudiced by admission of this cumulative evidence. Accordingly, Higgs's ineffective assistance of counsel claim based on trial counsel's failure to argue that the warrant was overbroad fails.

C.    POSSESSION OF METHAMPHETAMINE "RESIDUE"

Higgs argues that the evidence was insufficient to support his unlawful possession of methamphetamine conviction because the State only introduced evidence that he possessed methamphetamine "residue". Although Washington courts have declined to read a minimum quantity requirement into the unlawful possession statute, Higgs argues that we should hold that proof of residue of a controlled substance is insufficient to support a possession conviction. We decline.

A claim that the evidence was insufficient admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Evidence is sufficient to support a conviction if "after viewing the evidence and all reasonable inferences from it in a light most favorable to the State, a rational trier of fact could find each element of the crime proved beyond a reasonable doubt." *State v. Homan*, 172 Wn. App. 488, 490-91, 290 P.3d 1041 (2012), *review granted*, 177 Wn.2d 1022 (2013). We defer to the trier of fact on issues of conflicting testimony, witness credibility and persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

It is well settled that RCW 69.50.4013 does not require that a defendant possess a minimum amount of a controlled substance in order to sustain a conviction. *State v. Larkins*, 79 Wn.2d 392, 394, 486 P.2d 95 (1971); *State v. Rowell*, 138 Wn. App. 780, 786, 158 P.3d 1248 (2007); *State v. Malone*, 72 Wn. App. 429, 439, 864 P.2d 990 (1994); *State v. Williams*, 62 Wn. App. 748, 751, 815 P.2d 825 (1991). A plain reading of the statute supports this conclusion. RCW 69.50.4013(1) provides, "It is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his or her professional practice, or except as otherwise

18

authorized by this chapter." RCW 69.50.4013 does not contain a "measurable amount" element, and we are constrained from adding one. "We cannot add words or clauses to an unambiguous statute when the legislature has chosen not to include that language." *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d 792 (2003).

Higgs nevertheless argues that if we do not adopt a common law rule requiring a measurable amount of a controlled substance to sustain a conviction, "Washington will be the only state in the nation that permits conviction of a felony for possession of residue, without proof of knowledge." Br. of Appellant at 25. In support of his contention, Higgs cites cases from other jurisdictions requiring the State to prove that the defendant knowingly possessed the controlled substance in order to sustain a conviction for possession of drug residue. However, our Supreme Court has held that, by its plain language, the Washington possession statute does not contain a knowledge element and has refused to imply such an element. *State v. Bradshaw*, 152 Wn.2d 528, 537, 98 P.3d 1190 (2004). Further, contrary to Higgs's claim, Washington law does allow evidence of knowledge, or the lack thereof, in drug possession cases. *Bradshaw*, 152 Wn.2d at 538. Washington recognizes an unwitting possession affirmative defense to "ameliorate[ ] the harshness of [the] strict liability crime". *Bradshaw*, 152 Wn.2d at 538. Any complaint that Washington law currently places the burden of proof of knowledge on defendants is a matter properly addressed to the legislature, not the courts.

Accordingly, in the absence of a "measurable amount" element in RCW 69.50.4013, it was unlawful for Higgs to possess any amount of methamphetamine, including residue. In this case, the officers found a baggie and a light bulb smoking device containing methamphetamine residue in Higgs's home. Viewing the evidence in the light most favorable to the State, this evidence was sufficient for any rational trier of fact to find beyond a reasonable doubt that Higgs

19

No. 43097-5-II

unlawfully possessed the methamphetamine. We hold that there was sufficient evidence to support his possession of methamphetamine conviction.

We affirm Higgs's convictions.

_____
MAXA. J.

We concur:

_____
HUNT, J.

_____
WORSWICK, C.J.