FILED
COURT OF APPEALS
DIVISION II

2015 JAN 13 AM II: 15

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45088-7-II |
| Respondent, | |
| v. | |
| JEFFREY SITTON, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. — Jeffrey Sitton appeals his convictions for two counts of possession of a controlled substance (heroin and methamphetamine) and the trial court's imposition of legal financial obligations (LFOs). He argues that (1) the prosecutor engaged in misconduct by misstating the law regarding constructive possession during closing argument, (2) we should find as a matter of law that evidence of drug residue is insufficient to support convictions for felony drug possession crimes, and (3) the trial court erred in imposing LFOs to a county drug fund and for attorney fees as part of his sentence.

We hold that the prosecutor did not commit prosecutorial misconduct and that under well-established precedent, residue constitutes a sufficient quantity of drugs to support a conviction for possession. Because Sitton did not object to the imposition of LFOs below, we decline to review that issue. Accordingly, we affirm Sitton's convictions and sentence.

FACTS

Sitton lived in a garage apartment in Centralia. He was an admitted heroin addict with whom the Centralia police were familiar. In August 2012, police officers came to Sitton's apartment to investigate the theft of a video game console. The officers spoke with Sitton, who was not a suspect in that crime, apparently based on a suspicion that money from the sale of the stolen console had been used to purchase drugs at his apartment.

An officer asked Sitton if there were drug paraphernalia in the apartment. Sitton said there might be and offered to collect them and give them to the officer. Sitton entered the apartment and later returned with a pipe and a small wooden box containing items associated with heroin use. The items were covered in what appeared to be the residue of heroin and methamphetamine. He gave the box and the items inside to the police, and the police left. Sitton was later arrested and charged with two counts of possession of a controlled substance (heroin and methamphetamine) on the basis of residue found on the items.

Laboratory reports confirmed residual amounts of heroin and methamphetamine on the items Sitton gave the police. The items and laboratory reports were introduced as evidence at trial, and a forensic chemist from the state crime laboratory testified that the items contained residual amounts of heroin and methamphetamine. The State produced no other evidence of heroin or methamphetamine in Sitton's possession.

The key issues at trial were whether Sitton possessed the drugs and whether the defense of unwitting possession applied. During the opening phase of closing argument, the prosecutor tried to describe to the jury the doctrine of constructive possession generally, and the concept of dominion and control specifically, describing the latter concept as "the capacity to act, to

2

exercise control over something." Report of Proceedings (RP) at 172. During rebuttal, the prosecutor again revisited constructive possession, telling the jury that a defendant is guilty of a drug possession crime if he "*can* exercise dominion and control" over the drugs. RP at 180 (emphasis added).

The jury returned guilty verdicts, and Sitton was convicted of felony possession of heroin and methamphetamine. As part of Sitton's sentence, the trial court imposed LFOs amounting to $4,200. Sitton did not object to the imposition of the LFOs.

ANALYSIS

A.  PROSECUTORIAL MISCONDUCT

Sitton argues that the prosecutor engaged in misconduct by arguing that Sitton could be found guilty on the possession charges if he "can exercise" dominion and control over the drugs. He argues that this statement misstated the law because a person is guilty of possession only if he actually has dominion and control over the drugs, not if he merely had the opportunity to gain dominion and control. We disagree that the prosecutor's argument was improper when viewed in context.

To prevail on a claim of prosecutorial misconduct, a defendant must show that in the context of the record and the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). We examine the prosecutor's conduct and whether prejudice resulted therefrom "by examining that conduct in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.' " *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal

3

quotation marks omitted) (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

Misconduct is prejudicial if it had a substantial likelihood of affecting the verdict. *State v.*

*Emery*, 174 Wn.2d 741, 761, 278 P.3d 653 (2012).[1]

A prosecutor's misstatement of the law constitutes misconduct. *See State v. Davenport*,

100 Wn.2d 757, 764, 675 P.2d 1213 (1984). Similarly, a prosecutor acts improperly by arguing

to the jury that the applicable law differs from the law stated in the jury instructions. *State v.*

*Perez-Cervantes*, 141 Wn.2d 468, 475, 6 P.3d 1160 (2000).

Here, the jury instructions accurately described constructive possession as follows:

Constructive possession occurs when there is no actual physical possession but *there is dominion and control* over the substance.

Proximity alone without proof of dominion and control is insufficient to establish constructive possession.

In deciding whether the defendant had dominion and control over a substance, you are to consider all the relevant circumstances in the case. Factors that you may consider, among others, include whether the defendant had the ability to take actual possession of the substance, whether the defendant had the capacity to exclude others from possession of the substance, and whether the defendant had dominion and control over the premises where the substance was located.

Clerk's Papers at 18 (emphasis added); *see also State v. Davis*, 176 Wn. App. 849, 862,

315 P.3d 1105 (2013), *review granted*, 179 Wn.2d 1014 (2014).

During rebuttal argument the prosecutor described the doctrine of constructive possession

as follows:

---

[1] Sitton did not object to the prosecutor's argument at trial. A defendant waives any error by failing to object to the prosecutor's conduct, unless that conduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *Emery*, 174 Wn.2d at 760-61. Because we hold that the prosecutor's argument was not improper, we need not address waiver.

4

> [P]ossession does not mean ownership and does not mean use. . . . As long as you know [the drugs] are there and *you can exercise dominion and control*, guess what? You're guilty. Even if you didn't intend to use those drugs, hadn't used those drugs, if you know they are there and you know what they are, you are guilty *as long as you can exercise dominion and control*.

RP at 181 (emphasis added).

However, in the context of the rest of the closing argument, it becomes clear that the prosecutor accurately conveyed the concept of constructive possession to the jury. During the opening phase of the argument, the prosecutor told the jury:

> Constructive possession occurs when there's no actual possession, but there's dominion and control over the substance. It means that the item is not in the person's hands but they have dominion and control over it.

> Dominion and control: What does that mean?. . . You have contents in your refrigerator in your house. You live there with your significant other. Because you both know there are certain items in the fridge, say a couple of cans of beer, you can be said to be both in constructive possession of those items at the same time. You can both go to the fridge. You can both [open] up the refrigerator door. You can both take actual possession of these beers inside.

RP at 169. He then further clarified that dominion and control is "the capacity to act, to exercise control over something." RP at 172. This description of the doctrine is consistent with the jury instructions in the case and accurately states the law. *See Davis*, 176 Wn. App. at 862.

When the prosecutor's later statement is viewed in context as a restatement of this earlier description, it becomes clear that he was equating the exercise of dominion and control with taking actual possession. His description may have been inartful, but it was not a misstatement of the law. Therefore, we hold that the prosecutor's argument was not improper, and reject Sitton's prosecutorial misconduct claim.

B.    INSUFFICIENT EVIDENCE

Sitton argues that the State's evidence should be considered insufficient to sustain his convictions because the evidence showed only that he possessed a residual quantity of heroin and methamphetamine. He asks us to recognize a non-statutory element of drug possession crimes requiring possession of a minimum quantity of the drug. We deny Sitton's request and hold that sufficient evidence supports his conviction.

A criminal defendant challenging the sufficiency of the State's evidence on appeal admits the truth of that evidence, and we draw all reasonable inferences therefrom in the State's favor. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). Evidence is legally sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Owens*, 180 Wn.2d 90, 99, 323 P.3d 1030 (2014).

Sitton argues that we have the authority to designate a minimum amount element of drug possession crimes. He states that under RCW 9A.04.060 and *State v. Chavez*, 163 Wn.2d 262, 180 P.3d 1250 (2008), we can recognize non-statutory elements of statutory crimes.

RCW 9A.04.060 recognizes that the common law supplements all statutory crimes. And in *Chavez*, our Supreme Court held that "[t]he legislature can be deemed to have acquiesced in the definition [of common law assault] when it supplemented the criminal code with the common law in 1975." 163 Wn.2d at 274. But drug possession was never a common law crime. As a result, the legislature did not acquiesce in any preexisting definition that might have included a minimum amount requirement. Because Sitton points to no authority showing that we may

6

supplement criminal statutes with entirely new elements not derived from common law crimes, we will not construct any such requirement.[2]

Sitton also seems to suggest that we should interpret former RCW 69.50.4013 (2004)[3] as including an unstated minimum quantity requirement. But, as we recently noted, "[i]t is well settled that RCW 69.50.4013 does not require that a defendant possess a minimum amount of a controlled substance in order to sustain a conviction." *State v. Higgs*, 177 Wn. App. 414, 436, 311 P.3d 1266 (2013), *review denied*, 179 Wn.2d 1024 (2014); *see also State v. Bennett*, 168 Wn. App. 197, 210, 275 P.3d 1224 (2012). In *Higgs*, we made it clear that no minimum amount requirement may be harmonized with the statute. 177 Wn. App. at 436-37. We therefore reject Sitton's argument and hold that sufficient evidence supports Sitton's convictions.

C.   LEGAL FINANCIAL OBLIGATIONS

Sitton argues that the trial court erred by imposing LFOs against him without statutory authority and without inquiring into his ability to pay before imposing the LFOs. But Sitton did not object to the imposition of the LFOs, and we will not address their validity for the first time on appeal.

In general, we may decline to review any issue not raised below. RAP 2.5(a). Sitton argues that we must consider the LFO issue under RAP 2.5(a)(3) because the trial court committed a manifest error affecting a constitutional right. Specifically, he argues that imposing

---

[2] Sitton argues that because most other states have recognized some minimum quantity requirement, and because such a requirement would be good public policy, we should recognize such a requirement. However, such arguments are properly directed to the legislature, not this court.

[3] RCW 69.50.4013 was amended in 2013. LAWS OF 2013, ch. 3, § 20.

45088-7-II

attorney fees as LFOs at sentencing without finding that the defendant has the ability to pay impermissibly chilled his Sixth Amendment right to counsel. But our Supreme Court has held that the constitution does not require findings as to the defendant's ability to pay at the time of sentencing. *State v. Blank*, 131 Wn.2d 230, 239-42, 930 P.2d 1213 (1997). Therefore, we hold that the trial court in this case committed no constitutional error. Because Sitton failed to object below, we decline to review the trial court's imposition of LFOs.

We affirm Sitton's convictions and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

JOHANSON, C.J.

SUTTON, J.

8