# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51344-7-II |
| Respondent, | |
| v. | |
| RICHARD JAMIESON DEE BAGLEY, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — A jury convicted Richard Jamieson Dee Bagley of possession of a controlled substance (methamphetamine), contrary to RCW 69.50.4013 and .206(d)(2). Bagley appeals his conviction and sentence. Bagley contends that he proved the affirmative defense of unwitting possession by a preponderance of the evidence. He alternatively contends that we should remand his case and instruct the superior court to strike the criminal filing fee and the deoxyribonucleic acid (DNA) collection fee from his judgment and sentence. Bagley makes additional arguments in a statement of additional grounds (SAG). We hold that a rational trier of fact could have found that Bagley failed to prove his defense by a preponderance of the evidence, and we reject Bagley's SAG arguments. Accordingly, we affirm Bagley's conviction, but remand for the superior court to strike the criminal filing fee and the DNA collection fee.

FACTS

I. Background

Bagley was sentenced to a residential drug offender sentencing alternative, RCW 9.94A.660, for possession of stolen property and was receiving drug treatment at American Behavioral Health Systems (ABHS). In January 2017, while at ABHS, he received a furlough to visit an orthopedic specialist in Tacoma. His mother met him at the appointment. Bagley lived with his mother prior to receiving treatment at ABHS.

After the appointment, Bagley and his mother drove to their home so Bagley could get some clothes and a wallet. ABHS recommended that Bagley have a wallet to keep money in so he could use the vending machines at the treatment center. His mother retrieved the wallet and looked inside it but did not see anything. She then gave it to Bagley.

On February 11, Bagley's mother and his ex-girlfriend visited him at ABHS. Visitors are monitored, and when they enter and leave ABHS they are "pat-searched." ABHS does not allow visitors to exchange items with clients, and visitors may have only limited contact with clients.

After this visit, ABHS staff member, Jake Sanchez, searched Bagley. Sanchez checked Bagley's wallet and found a small "baggie" that contained methamphetamine. Sanchez reported the baggie to his supervisor who called the police. An officer arrested Bagley. The State charged Bagley with possession of a controlled substance—methamphetamine.

II. Trial

At trial, Bagley stipulated that the substance inside the baggie was methamphetamine but he asserted that he possessed the methamphetamine unwittingly. In addition to his own testimony,

Bagley presented testimony from his mother, forensic scientist Ann Spong, and forensic scientist Kay Sweeney.

Bagley's mother testified that she was Bagley's caregiver. Bagley was involved in an automobile accident in 2010 and, as a result, underwent brain surgery including a frontal lobotomy. His mother acted as his representative payee and made sure he took his medication.

Forensic scientist Spong tested a swab from the baggie. Spong concluded that the swab contained a DNA mixture of three or more female profiles. She testified that Bagley's DNA was excluded as a contributor to the DNA found on the baggie. Bagley also presented the testimony of forensic scientist Sweeney, who testified that she examined and evaluated the baggie and did not find any fingerprints.

Bagley testified that when he retrieved the wallet from his mother's home it did not have methamphetamine in it. He said it contained only gift cards, some wallet money, and his identification. He explained that he stored his wallet in a locker at ABHS that he was unable to lock. He asserted that he was surprised when Sanchez found methamphetamine in his wallet and that he had no idea it was in there. Further, Bagley testified that staff at ABHS gave him a random urinalysis test about every 10 days. He stated that all his tests came back negative.

The State presented the testimony of Sanchez and forensic expert Trevor Chowen, among others.

Sanchez testified that he found the baggie "wrapped up, folded up and, like, tucked down deep" in the corner of Bagley's wallet. 2 Verbatim Report of Proceedings (VRP) at 57. He also testified that clients at ABHS would be given random urinalysis tests about every 10 days. However, he did not know how Bagley was doing in treatment or how many times he was tested.

Chowen is a forensic scientist in the DNA section at the Washington State Patrol Crime Lab. He testified that the surface being touched can play a role in how much DNA is left behind. For example, an abrasive surface scrapes off more cells from an individual's hands compared to a smooth surface. He also testified that some individuals leave behind more cells than others. Additionally, environmental factors can affect the amount of DNA left behind. He stated that it is possible for touch DNA to be wiped off an object. The jury convicted Bagley as charged.

### III. SENTENCING

The court sentenced Bagley to 18 months of total confinement. Bagley's judgment and sentence included a $200 criminal filing fee and a $100 DNA collection fee. Bagley appeals his conviction and sentence.

### ANALYSIS

### I. UNWITTING POSSESSION

Bagley contends that the State failed to prove beyond a reasonable doubt that Bagley possessed methamphetamine because the evidence supported his affirmative defense of unwitting possession. We disagree.

### A. PRINCIPLES OF LAW

When reviewing the sufficiency of the evidence relating to an affirmative defense, "[t]he appropriate standard of review in such cases is whether, considering the evidence in the light most favorable to the State, a rational trier of fact could have found that the defendant failed to prove the defense by a preponderance of the evidence." *State v. Lively*, 130 Wn.2d 1, 17, 921 P.2d 1035 (1996). Due process requires that the State prove every element of a crime beyond a reasonable doubt. *In re Matter of Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State*

*v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016); *State v. Johnson*, 188 Wn.2d 742, 750, 399 P.3d 507 (2017). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

The charge of unlawful possession of a controlled substance requires the State to prove the nature of the substance and the fact of possession by the defendant. *State v. Bradshaw*, 152 Wn.2d 528, 538, 98 P.3d 1190 (2004). Unlawful possession of a controlled substance does not require proof of knowledge. *Id.*; *State v. Higgs*, 177 Wn. App. 414, 437, 311 P.3d 1266 (2013).

However, "Washington recognizes an unwitting possession affirmative defense to 'ameliorate[] the harshness of [the] strict liability crime.'" *Higgs*, 177 Wn. App. at 437 (alterations in original) (quoting *Bradshaw*, 152 Wn.2d at 538). To prove unwitting possession, the defendant must show by a preponderance of the evidence that he did not know the substance was in his possession or he did not know the nature of the substance. *State v. Olinger*, 130 Wn. App. 22, 26, 121 P.3d 724 (2005). "We defer to the trier of fact on factual questions." *Id*. The fact finder "is in the best position to evaluate conflicting evidence, witness credibility, and the weight to be assigned to the evidence." *Id*.

B. AFFIRMATIVE DEFENSE

Bagley argues that he proved his affirmative defense and, therefore, asks us to reverse his conviction. Upon reviewing the evidence in the light most favorable to the State, we disagree.

With respect to the testimony offered by expert witness Spong that Bagley's DNA was not on the baggie, on cross-examination she admitted it was possible for Bagley to have touched the baggie. And the State's forensic expert, Chowen, explained that there are a variety of factors that

can explain why Bagley's DNA was not on the baggie. Chowen explained that an abrasive surface scrapes off more cells than a smooth surface, such as a baggie, and he explained that some people deposit more cells on a surface than others. The baggie also could have been wiped off. Sweeney, Bagley's fingerprint expert, testified there were *no* fingerprints on the baggie, making her testimony neutral at best.

Bagley asserts that Sanchez's testimony corroborated Bagley's testimony that his possession was unwitting because Sanchez testified that the baggie was tucked deep into the wallet where Bagley would not have seen it by merely glancing at the open wallet. He also contends that Sanchez corroborated his testimony that urinalysis tests were given approximately every 10 days and that his tests came back negative. Sanchez did testify that the baggie was "wrapped up, folded up and, like, tucked down deep. Like, if you just opened [the wallet] up to just grab cash, you wouldn't see it." 2 VRP at 57. However, the jury could also infer from this testimony that the fact that the baggie was tucked deep into Bagley's wallet was evidence that Bagley was trying to hide it. With regard to the urinalysis tests, Sanchez corroborated Bagley's testimony only to the extent that he stated a random urinalysis test was given every 10 days, but Sanchez went on to testify that he did not know how many times Bagley was tested or the results of the tests.

Moreover, there was evidence presented at trial that the baggie was located in Bagley's wallet, which Bagley had retrieved from his home. Bagley testified that his drug of choice was methamphetamine, the same drug found in his wallet on his person. Bagley also testified that he stored his wallet in his locker at ABHS.

Bagley relies on *City of Spokane v. Beck*, 130 Wn. App. 481, 123 P.3d 854 (2005), to support his argument. In *Beck*, the defendant appealed her conviction of being in physical control

of a motor vehicle while intoxicated. *Id.* at 484. Beck argued that the jury's verdict was not supported by substantial evidence because she proved the affirmative defense that she had moved her vehicle safely off the roadway. *Id.* at 486. At trial, the officer who responded to the driving under the influence call conceded that Beck's vehicle was off the roadway and that there was no danger. *Id.* at 484. There was also evidence presented at trial that Beck's car was running and parked in a lot off the roadway and that she called for a ride before falling asleep. *Id.* at 488. Division Three of this court found the officer's concession "most compelling" and held that the evidence was insufficient for a jury to conclude that Beck did not prove she was safely off the roadway. *Id*.

*Beck* is of no help to Bagley. Bagley concedes "none of the state's witnesses admitted an element of Bagley's affirmative defense as the officer did in *Beck.*" Br. of Appellant at 8.

With respect to Bagley's denial that he knew the methamphetamine was in his wallet, the jury evidently did not find Bagley's testimony credible. We defer to the trier of fact on issues of witness credibility and the weight to be assigned to evidence. *Olinger*, 130 Wn. App. at 26. Thus, we hold that a rational trier of fact could have found that Bagley failed to prove unwitting possession by a preponderance of the evidence.

## II.  CRIMINAL FILING FEE AND DNA COLLECTION FEE

Bagley argues that recent amendments to the statutes addressing LFOs require us to strike the $200 criminal filing fee and $100 DNA collection fee from his judgment and sentence. The State concedes that we should remand to the trial court to strike these fees. We accept the State's concession.

The legislature recently amended RCW 43.43.7541 and RCW 36.18.020(2)(h). LAWS OF 2018, ch. 269, §§ 18, 17. These amendments apply prospectively to cases pending on appeal. *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018). RCW 36.18.020(2)(h) prohibits courts from imposing the criminal filing fee on indigent defendants. LAWS OF 2018, ch. 269, §17. The State concedes that Bagley qualifies under RCW 36.18.020(2)(h) and notes that Bagley was on disability and receiving public assistance. Thus, we remand to the trial court to strike the criminal filing fee.

RCW 43.43.7541 prohibits courts from imposing the DNA collection fee if a defendant's DNA has already been collected as the result of a prior conviction. LAWS OF 2018, ch. 269, § 18. The State's records show that Bagley's DNA was previously collected. Thus, we remand for the trial court to strike the DNA collection fee under the 2018 amendments.

SAG ARGUMENTS

Bagley appears to argue in his SAG that (1) the trial court erred in allowing the prosecutor to exclude during the jury selection process ex-felons and anyone who had ever abused drugs and alcohol or had known anyone who had ever abused drugs and alcohol, (2) defense counsel performed deficiently by not spending time interviewing Bagley about the case, (3) defense counsel performed deficiently by not going to ABHS to investigate and ignoring a list of staff who knew of the circumstances at ABHS, (4) defense counsel performed deficiently by not cross-examining the ABHS witness at trial about the circumstances and situation at ABHS, (5) defense counsel performed deficiently by presenting an out-of-state DNA expert, (6) defense counsel performed deficiently by failing to present medical documents or medical expert testimony, (7) defense counsel performed deficiently by not allowing him time to read his judgment and sentence

at his sentencing hearing, and (8) defense counsel performed deficiently by not spending "more than a few minutes alone with [Bagley]." SAG at 3. Bagley suggests that the deficiencies in defense counsel's performance prejudiced him, thereby denying him effective assistance of counsel. Bagley's claims fail.

To prevail on an ineffective assistance of counsel claim, Bagley must show that his counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). A defendant's ineffective assistance of counsel claim fails if either prong is not met. *Strickland*, 466 U.S. at 697. Counsel's performance is deficient if it falls "'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland*, 466 U.S. at 688). A defendant must overcome a strong presumption that counsel was effective. *Id.* Performance is not deficient if counsel's conduct can be characterized as legitimate trial strategy or tactics. *Id.* To show prejudice, the defendant must show that there is reasonable probability that, but for the deficiency, the result of the proceeding would have been different. *Id.* at 34.

When a claim of error rests on information outside of the record, the reviewing court in a direct appeal cannot address the claim. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995). "[A] personal restraint petition is the appropriate vehicle for bringing those matters before the court." *Id.*

With these principles in mind, we turn to Bagley's claims.

Claim 1: Bagley claims that the trial court allowed the prosecutor to exclude during jury selection ex-felons and anyone who had ever abused drugs and alcohol or had known anyone who

had ever abused drugs and alcohol. This claim rests on information outside of the record, and therefore, we do not address it.

Claim 2: Bagley claims his counsel performed deficiently by not spending time interviewing Bagley about the case. This claim rests on information outside of the record, and therefore, we do not address it.

Claim 3: Bagley claims his counsel performed deficiently by not going to ABHS to investigate and ignoring a list of staff who knew of the circumstances at ABHS. This claim rests on information outside of the record, and therefore, we do not address it.

Claim 4: Although it is apparent from the record that defense counsel did not cross-examine Sanchez (the only ABHS worker who testified) about the lockers where ABHS clients stored personal items or the living arrangements at ABHS, counsel's *reason* for not doing so is not in the record. As such, we cannot address it. *See State v. Linville*, 191 Wn.2d 513, 525, 423 P.3d 842 (2018). Moreover, the extent of cross-examination is a matter of judgment and strategy and is generally left to the discretion of counsel. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 720, 101 P.3d 1 (2004).

Claim 5: Bagley claims his counsel was deficient for electing to call a DNA expert from out of state. In providing background information about herself, Spong testified she is from California. Bagley fails to demonstrate prejudice. Spong's testimony was favorable to Bagley, and Bagley fails to explain how or demonstrate that a "Lewis County" jury would discount the testimony of an expert on the basis that she lives in California.

Claim 6: Bagley claims his counsel was deficient for electing not to introduce medical documents or expert medical testimony regarding Bagley's medical condition. This claim rests on information outside of the record and therefore we do not address it. Additionally, an attorney's decision to call a witness is a matter of trial tactics left to the discretion of trial counsel and generally will not support a claim of ineffective assistance of counsel. *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 492, 251 P.3d 884 (2010); *State v. Byrd*, 30 Wn. App. 794, 799, 638 P.2d 601 (1981).

Claim 7: Bagley appears to claim that defense counsel performed deficiently by not allowing him time to read his judgment and sentence at his sentencing hearing, instead promising to provide him a copy of the judgment and sentence following the sentencing. He claims that he signed his judgment and sentence "under duress" as a result, because although his attorney furnished him a copy of his judgment and sentence at the Lewis County Jail following his sentencing hearing, he was deprived of possession of the document by the Department of Corrections (DOC) until his release from custody six months later. SAG at 2. To the extent this is a complaint about DOC allegedly not providing Bagley his copy of his judgment and sentence until after his release from custody six months after his sentencing, this claim rests on information outside the record and therefore we do not address it. Additionally, this is not a claim for which we can provide relief. To the extent this is a complaint that he signed his judgment and sentence under duress because he did not understand its contents and defense counsel performed deficiently by not explaining the contents to him, we have reviewed the record and find no error.

At sentencing, the court asked Bagley if he went over the judgment and sentence with his counsel. Bagley responded that he had flipped through it and asked if he could have a copy. The sentencing court emphasized that he could give him a copy but stated, "I'm happy to do that, but I want to make sure that you're not being rushed, that you have plenty of time to look through it and make sure it reflects what I said out loud." 2 VRP at 182. Bagley emphasized that it takes him a long time to read things. Again, the trial court asked if he needed more time, and Bagley responded that the trial court could go ahead and sign it and repeated that he would like a copy.

The trial court then verbally informed him that he would lose the right to own or possess a firearm and that he had the right to appeal. Bagley said he understood. On the record, defense counsel then stated, "As far as getting a copy of that, is that something we can do right now or," and the clerk said, "I can get you a copy." 2 VRP at 185.

The record does not show that defense counsel performed deficiently or that any deficiency prejudiced Bagley.

Claim 8: Bagley claims defense counsel performed deficiently by not spending "more than a few minutes alone with [him]." SAG at 3. This claim rests on information outside the record, and therefore, we do not address it.

CONCLUSION

Accordingly, we affirm Bagley's conviction, but remand to the court to strike the LFOs in accordance with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

WORSWICK, P.J.

GLASGOW, J.