# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>JOHN RICHARD RING,<br><br>Appellant. | No. 46145-5-II<br>consolidated with<br>No. 46155-2-II<br>and<br>No. 46345-8-II<br><br>PUBLISHED IN PART OPINION |

MAXA, J. — John Ring appeals his convictions for three counts of forgery, one count of possession of a controlled substance, three counts of first degree possession of stolen property, one count of first degree trafficking in stolen property, and three counts of bail jumping.[1] In the published portion of this opinion, we hold that the information charging Ring with forgery was not deficient in failing to allege the "legal efficacy" of the forged documents because legal efficacy is not an essential element of the crime. Therefore, we affirm Ring's three forgery convictions. In the unpublished portion of this opinion, we reverse and dismiss the remaining challenged convictions. Accordingly, we affirm in part, reverse in part, and remand for resentencing.

---

[1] Ring also was convicted of several other offenses, but does not challenge those convictions on appeal.

FACTS

In September 2012, the Mason County Sherriff's Office began investigating Ring after receiving a complaint that he was attempting to sell a stolen 1968 GMC truck on Craigslist. Eventually, officers obtained a search warrant to search Ring's property.

When searching Ring's property, deputies found papers depicting an abandoned vehicle report with a notary sale and process stamp, a number of affidavits of lost title and release of interest forms, the vehicle certificate of title for the 1968 GMC truck, and numerous other miscellaneous vehicle titles and documents. These documents were very similar to purportedly forged documents that Ring had submitted to the Department of Licensing.

The State charged Ring with three counts of forgery. The information recited the statutory elements of forgery, but did not allege that the documents Ring allegedly forged had any legal efficacy if genuine. Ring did not challenge the information in the trial court.

A jury convicted Ring on all three forgery counts. He appeals his convictions.

ANALYSIS

Ring argues that the "legal efficacy" of the forged documents is an essential element of forgery, and that the information for his forgery charges was insufficient because it did not include a legal efficacy element. We disagree that legal efficacy of the forged documents is an essential element of the crime of forgery and hold that the information here was sufficient.

A.     LEGAL PRINCIPLES

In criminal cases, accused persons have a constitutional right under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution to know the charges that have been brought against them. The State provides formal notice of the charges

in the information or charging document. CrR 2.1(a)(1) ("[T]he information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged.").

A charging document is constitutionally sufficient if it includes all the "essential elements" of a crime. *State v. Johnson*, 180 Wn.2d 295, 300, 325 P.3d 135 (2014). The purpose of this essential elements rule is to give notice to the accused of the charges and to allow him or her to prepare a defense. *Id.* An essential element of an offense is an element that is necessary to establish the illegality of the behavior charged. *Id.* Essential elements include only those facts that must be proved beyond a reasonable doubt to convict a defendant of the charged crime. *State v. Zillyette*, 178 Wn.2d 153, 158, 307 P.3d 712 (2013). "If the State fails to allege every essential element, then the information is insufficient and the charge must be dismissed without prejudice." *Johnson*, 180 Wn.2d at 300-01.

The law distinguishes between essential elements of a crime and the definitions of essential elements. *See id*. at 302. The Supreme Court in *Johnson* expressly held that definitions of essential elements are not required to be included in the information. *Id*.

We review the constitutional sufficiency of a charging document de novo. *Id.* at 300. Where, as here, a defendant challenges the sufficiency of a charging document for the first time on appeal, "we construe the document liberally and will find it sufficient if the necessary elements appear in any form, or by fair construction may be found, on the document's face." *State v. Satterthwaite*, 186 Wn. App. 359, 362, 344 P.3d 738 (2015). But if the charging document cannot be construed to give notice of or to contain in some manner the essential elements of an offense, it is insufficient and even the most liberal reading cannot cure it. *Id.* at 362-63.

46145-5 / 46155-2 / 46345-8

B.    LEGAL EFFICACY REQUIREMENT

RCW 9A.60.020(1) provides,

A person is guilty of forgery if, with intent to injure or defraud: (a) He or she falsely makes, completes, or alters a *written instrument* or; (b) He or she possesses, utters, offers, disposes of, or puts off as true a *written instrument* which he or she knows to be forged.

(Emphasis added.)  Under this statute, the existence of a written instrument clearly is an essential element of the crime of forgery.  *See State v. Esquivel*, 71 Wn. App. 868, 870, 863 P.2d 113 (1993).

RCW 9A.60.010(7) defines "written instrument" as,

(a) Any paper, document, or other instrument containing written or printed matter or its equivalent; or (b) any access device, token, stamp, seal, badge, trademark, or other evidence or symbol of value, right, privilege, or identification.

Under this definition, forgery requires the falsification of a paper, document, or "other instrument."  RCW 9A.60.010(7).  However, neither RCW 9A.60.020(1) nor RCW 9A.60.010(7) defines "instrument."  Therefore, Washington courts have looked to the common law for the definition.  *State v. Scoby*, 117 Wn.2d 55, 57, 810 P.2d 1358, 815 P.2d 1362 (1991); *see* RCW 9A.04.060 (stating that the common law governing the commission of crimes supplements Washington penal statutes to the extent that the common law is not inconsistent with Washington's Constitution or statutes).

Under the common law, an instrument is something that, if genuine, would have legal effect or be the foundation of legal liability.  *Scoby*, 117 Wn.2d at 57-58.  As a result, a "written instrument" as used in RCW 9A.60.020, is a writing that has "legal efficacy."  *State v. Richards*, 109 Wn. App. 648, 654, 36 P.3d 1119 (2001).  Based on this definition, a writing can support a

4

forgery charge only if the writing would have legal efficacy if genuine. *State v. Smith*, 72 Wn. App. 237, 243, 864 P.2d 406 (1993).

The rule of legal efficacy was part of Washington forgery law under former chapter 9.44 RCW from 1909 until 1975. *Id.* at 239. This court in *Smith* held that the legislature intended to continue the legal efficacy rule under the current forgery statutes, which were enacted in 1975. *Id.* at 240-43.

C.   LEGAL EFFICACY AS AN ESSENTIAL ELEMENT OF FORGERY

Here, the information that charged Ring with three counts of forgery stated that he committed forgery when he "with intent to injure or defraud, did falsely make, complete or alter a written instrument, and/or did possess, utter, offer, dispose of, or put off as true a written instrument which he knew to be forged . . . ; contrary to RCW 9A.60.020(1)." Clerk's Papers (CP) (case no. 46145-5-II) at 68, 69. The information did not allege that the documents Ring allegedly forged had any legal efficacy if genuine. Therefore, the information was insufficient if legal efficacy is an essential element of forgery.

Ring's argument that the legal efficacy of the forged document is an essential element of forgery primarily is based on *State v. Kuluris*, 132 Wash. 149, 231 P. 782 (1925). In that case, the Supreme Court determined that an information charging second degree forgery was constitutionally insufficient because the information failed to allege that the forged document had legal efficacy. *Id.* at 150-52. The court based its holding on the rule that to constitute a forgery, a writing must, if genuine, have efficacy as affecting some legal right. *Id.* at 151.

*Kuluris* supports Ring's argument that the information here was insufficient because it did not allege facts sufficient to show that the documents at issue would have legal efficacy if

5

genuine. And *Kuluris* has not been expressly overruled and was cited with approval (although not in an essential elements context) in *Smith*. 72 Wn. App. at 239-40.

However, the Supreme Court in *Johnson* more recently has distinguished between an essential element of a crime and a definition of an essential element when evaluating the sufficiency of an information. 180 Wn.2d at 300-02. The court held that an information did not need to include definitions of essential elements of a crime. *Id.* at 302. The court explained that a definition is a term that defines and limits an essential element's scope, not a term that is necessary to establish the illegality of the behavior charged. *See id.* at 302.

The language of RCW 9A.60.020 demonstrates that legal efficacy is not an essential element of the crime of forgery. RCW 9A.60.020 requires the existence of a written instrument, and that is the essential element. The Supreme Court in *Scoby* made it clear that legal efficacy is part of the common law *definition* of "instrument." 117 Wn.2d at 57-58; *see also Richards*, 109 Wn. App. at 654. As a result, under *Johnson* the information charging Ring with forgery was not required to allege the legal efficacy of the forged documents.

We are faced with a conflict between a 1925 case specifically addressing the sufficiency of an information charging forgery and a 2014 case holding that definitions of essential elements of a crime do not need to be included in the information. We hold that *Kuluris* is inconsistent with *Johnson*, and therefore that *Johnson* abrogated *Kuluris* in the forgery context.

We hold that a document's legal efficacy requirement is a common law definition of "instrument" in RCW 9A.60.0020 and was not required to be included in the information charging Ring with three counts of forgery. Accordingly, we hold that the information charging Ring with forgery was sufficient.

6

We affirm Ring's three forgery convictions, reverse his remaining challenged convictions in the unpublished portion of this opinion, and remand for resentencing.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

ADDITIONAL ISSUES

In the unpublished portion of this opinion, we hold that (1) as the State concedes, there was insufficient evidence to support Ring's conviction for first degree trafficking in stolen property based on the language of the to-convict instruction; (2) the trial court erred by admitting certain methamphetamine evidence without determining whether the officers were executing the valid portion of a partially overbroad search warrant when they discovered drug evidence; (3) as the State concedes, there was insufficient evidence to support one of Ring's first degree possession of stolen property convictions because the State failed to prove that the market value of the stolen property exceeded $5,000; (4) there was insufficient evidence to support Ring's other possession of stolen property conviction because the State failed to prove that he "concealed" the stolen property; (5) as the State concedes, Ring's three bail jumping convictions violated double jeopardy; and (6) the record is insufficient to address Ring's assertion in his statement of additional grounds (SAG) that his attorney was ineffective.[2]

---

[2] Ring also argues, and the State concedes, that on remand the trial court must correct an error in Ring's judgment and sentence under cause number 12-1-00408-1. However, because we reverse both convictions in that case, we do not address this issue.

ADDITIONAL FACTS

*Search of Ring's and Speaks' Property*

In September 2012, the Mason County Sherriff's Office obtained a search warrant to search Ring's property. The warrant authorized law enforcement to search for specific stolen property and other items, as well as any contraband including controlled substances.

When searching Ring's property, deputies discovered several suspected stolen items, as well as an aluminum can that was smudged with a white powdery residue. This white powder later was determined to be methamphetamine.

Law enforcement learned that Ring sometimes stored equipment at Troy Dean Speaks Jr.'s property, and obtained and executed a search warrant for that property. During this search, the deputies found equipment that they suspected was stolen, including a Wacker generator and a Kubota backhoe. II RP 277-84, 386. According to Speaks, Ring brought the allegedly stolen equipment onto Speaks' property.

*Criminal Charges*

The State charged Ring under three cause numbers. Under cause number 12-1-00398-0, Ring was charged with one count of first degree trafficking in stolen property regarding the 1968 GMC truck in addition to the three counts of forgery discussed above.[3] II CP 67-71. Under cause number 12-1-00406-4, Ring was charged with one count of unlawful possession of a

---

[3] The State also charged Ring with two counts of possession of a stolen vehicle (a 1968 GMC truck and a 2003 Honda motorcycle), first degree possession of stolen property (several tools including a tire balancing machine), and second degree possession of stolen property (a trailer). Ring does not appeal these convictions.

controlled substance. Under cause number 12-1-00408-1, Ring was charged with two counts of first degree possession of stolen property (a Wacker generator and a Kubota backhoe).[4]

*Bail Jumping*

After Ring was formally charged, he was released under court order with a requirement to appear in court on January 28, 2013. Ring failed to report on January 28. The State charged him with three counts of bail jumping under the three separate cause numbers. In addition, the State charged Ring with bail jumping under a fourth cause of action (not involved in this appeal) based on the same facts.

*Motion to Suppress*

Ring brought a CrR 3.6 motion to suppress the methamphetamine residue found on the aluminum can seized pursuant to the search warrant for Ring's property, arguing that the warrant was issued without probable cause. Paragraphs 1 through 6 of the warrant authorized law enforcement to search for specific stolen property and other items,[5] while paragraph 7 authorized law enforcement to search for "[a]ny contraband (including controlled substances)." Ex. 1, at 3. The trial court found that probable cause supported paragraphs 1 through 6 and that portion of the warrant was valid. However, the trial court found that probable cause did not support

---

[4] The State also charged Ring with a third count of first degree possession of stolen property involving a Bobcat mini excavator, but he does not appeal that conviction.

[5] The trial court paraphrased the content searchable under paragraphs 1 through 6 of the search warrant as "a 1968 GMC truck, computers, digital devices, cable being used to gain access to the internet, devices capable of taking and storing photographs, papers, photographs depicting images of stolen truck or internet posting, correspondence, evidence related to the forging of a title, but not limited to computer printer, paperwork reference filing for lost title of automobiles, papers, receipts, bills, ledgers that can be used to determine and show ownership, dominion and control." I Report of Proceedings (RP) at 70-71.

paragraph 7 and struck that paragraph. Therefore, the trial court suppressed the methamphetamine evidence.

The State filed a motion for reconsideration of the trial court's suppression order. The State argued that even though paragraph 7 of the warrant was overbroad, the State's warrantless seizure of the aluminum can was proper under the plain view exception to the warrant requirement. The trial court held an evidentiary hearing on whether the seized aluminum can could be admitted.

Deputy Jason Sisson of the Mason County Sheriff's Office testified that he was present at the execution of the search warrant at Ring's property to assist with the search. Sisson characterized the search as "a general search . . . of the area to begin with, and then . . . [a search of] different areas in groups." I Report of Proceedings (RP) at 56. He admitted at the hearing that he was not aware of the purpose of the warrant, and could not remember exactly what the deputies were searching for. Sisson testified that he was assigned to search a metal shipping container, and that inside the container was an aluminum can with a white residue on it. He testified that based on his training and experience, he immediately recognized that the white residue appeared to more than likely be methamphetamine. No other officer testified regarding the search.

The trial court found that Sisson was lawfully present in the shipping container to look for stolen property identified by the valid portion of the warrant, and that Sisson properly seized the aluminum can because he believed the white powdery substance was methamphetamine based on his training and experience. Accordingly, the court reversed its prior suppression order and admitted the methamphetamine evidence.

10

46145-5 / 46155-2 / 46345-8

*Trial*

The trial court consolidated cause numbers 12-1-00398-0, 12-1-00406-4, and 12-1-00408-1 for trial.

The to-convict jury instruction for first degree trafficking of stolen property, to which the State did not object, stated that the jury must find that Ring "knowingly initiated, organized, planned, financed, directed, managed, or supervised" the theft of the 1968 GMC truck *and* "sold, transferred, distributed, dispensed, or otherwise disposed of stolen property to another person or bought, received, possessed, or obtained control of stolen property, with intent to sell, transfer, distribute, dispense, or otherwise dispose of the property to another person with knowledge that the property was stolen." CP (cause no. 46145-5-II) at 49-50. The State presented no evidence linking Ring to the theft of the truck.

The to-convict instruction for first degree possession of stolen property also required the State to prove that the market value of the stolen property exceeded $5,000. A shop foreman testified that the value of the particular Wacker generator involved in the case was $25,000. The State did not produce any additional information on the market value of the generator.

The to-convict instruction for first degree possession of stolen property, to which the State did not object, provided that the State must prove that Ring "knowingly received, retained, possessed, concealed stolen property." CP (case no. 46145-5-II) at 52. Regarding the "concealed" element, the evidence showed that Ring stored the Kubota backhoe in plain sight on Speaks' property. There was no evidence that Ring or any other person attempted to cover or alter the backhoe's physical appearance.

11

The jury found Ring guilty of first degree trafficking in stolen property, unlawful possession of a controlled substance, two counts of first degree possession of stolen property, and three counts of bail jumping.

Rings appeals his convictions.

ANALYSIS

A.   INSUFFICIENT EVIDENCE OF TRAFFICKING IN STOLEN PROPERTY

Ring argues, and the State concedes, that (1) the to-convict instruction for trafficking in stolen property required the State to prove that Ring was trafficking in the property *and* that he participated in the theft of the property, and (2) the evidence was insufficient to prove the second element.  We accept the State's concession.

RCW 9A.82.050(1) provides one of two means of trafficking in stolen property: (1) initiating, organizing, planning, financing, directing, managing, or supervising the theft of property *or* (2) trafficking in stolen property.  *State v. Owens*, 180 Wn.2d 90, 96-99, 323 P.3d 1030 (2014).  However, here the to-convict instruction – to which the State did not to object – required the State to prove both means.  The State assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the "to-convict" instruction.  *State v. Hudlow*, 182 Wn. App. 266, 285, 331 P.3d 90 (2014).

The State concedes that it failed to prove that Ring participated in the theft of the 1968 GMC truck.  We accept the State's concession and reverse and dismiss Ring's conviction for first degree trafficking in stolen property.

12

B.      ADMISSION OF METHAMPHETAMINE EVIDENCE

The trial court found that paragraphs 1 through 6 of the search warrant for Ring's property were valid, but that paragraph 7 – which allowed a search for controlled substances – was not supported by probable cause. Ring argues that the trial court erred in admitting the methamphetamine evidence because the State provided insufficient evidence that the methamphetamine was discovered while executing the valid portion of the search warrant and not the invalid portion. We agree.

1.      Severability Analysis

A search warrant can be issued only if supported by probable cause. *State v. Lyons*, 174 Wn.2d 354, 359, 275 P.3d 314 (2012). A warrant is "overbroad" if it describes items for which probable cause does not exist. *State v. Higgs*, 177 Wn. App. 414, 426, 311 P.3d 1266 (2013), *review denied*, 179 Wn.2d 1024 (2014). A warrant is overbroad if some portions of a warrant are supported by probable cause and some portions are not. *Id.* Neither party challenges the trial court's ruling that the search warrant for Ring's property was partially overbroad – that probable cause supported paragraphs 1 through 6 but did not support paragraph 7, which allowed a search for controlled substances. Br. of Resp. at 11.

If a search warrant is partially overbroad, evidence seized pursuant to that warrant is not necessarily inadmissible. *Higgs*, 177 Wn. App. at 430. Under the severability doctrine, if a meaningful separation can be made between the valid and invalid portions of a warrant, evidence seized pursuant to the valid portions of the warrant will not be suppressed. *State v. Perrone*, 119 Wn.2d 538, 556, 834 P.2d 611 (1992); *Higgs*, 177 Wn. App. at 430. However, if the valid

portions of the warrant cannot be severed, all evidence seized pursuant to the partially overbroad warrant must be suppressed. *See Perrone*, 119 Wn.2d at 556-59.

In *State v. Maddox*, this court held that the severability doctrine applies only when five requirements are met: (1) the warrant must lawfully have authorized entry into the premises; (2) the warrant must include one or more particularly described items for which there is probable cause; (3) the part of the warrant that includes particularly described items supported by probable cause must be significant when compared to the warrant as a whole; (4) the searching officers must have found and seized the disputed items while executing the valid part of the warrant; and (5) the officers must not have conducted a general search in which they "flagrantly disregarded" the warrant's scope. 116 Wn. App. 796, 807-08, 67 P.3d 1135 (2003 *aff'd*, 152 Wn.2d 499, 98 P.3d 1199 (2004); *see also Higgs*, 177 Wn. App. at 430-31. Conducting such an analysis is required before admitting evidence seized pursuant to a partially overbroad warrant. *See Higgs*, 177 Wn. App. at 430.

Regarding the first factor, the trial court here found that officers were lawfully on the property pursuant to the valid portion of the search warrant allowing a search for stolen property. Regarding the second factor, the trial court previously had ruled that probable cause supported paragraphs 1 through 6 of the warrant. And Ring does not dispute the third factor, that the valid portion of the warrant was significant when compared to the warrant as a whole.

Ring argues that the fourth and fifth severability factors were not satisfied here. The fourth factor is that the searching officers must have found and seized the disputed items while executing the valid part of the warrant. *Maddox*, 116 Wn. App. at 808. The trial court found that under the valid portion of the warrant it was appropriate for the officers to be searching the

14

container where the methamphetamine evidence was discovered. But Ring claims that although the officers *could have* been searching the container for stolen property, the evidence in fact showed that Sisson was unfamiliar with the warrant and did not know what he was searching for.

Ring is correct that there is no evidence *in this record* that Sisson or any other law enforcement officers were executing the valid portions of the warrant. Sisson testified that he was merely present to assist detectives, and that he could not remember what the exact search was for without referencing the warrant. The State argues that even without the invalid portion of the warrant, officers would have searched the container for stolen property under the valid portion. However, in the absence of any evidence regarding what the officers were searching for, the evidence was insufficient to establish that the officers were searching for stolen property as opposed to controlled substances.

The fifth factor is whether the officers were conducting a general search where they flagrantly disregarded the warrant's scope. *Maddox*, 116 Wn. App. at 808-09. Ring argues that the State failed to establish that Sisson was not conducting a general search. The trial court made no finding on this issue. Ring relies on Sisson's testimony that he was conducting a "general search," and that he did not know what he was searching for. 1 RP at 59.

Ring is correct that there is no evidence *in this record* that the officers were not conducting a general search. The State argues that officers were searching in a place where evidence specifically authorized by the valid portion of the search warrant could have been found. However, in the absence of any evidence regarding what officers were searching for, the evidence is insufficient to establish that the officers were searching for stolen property as opposed to conducting a general search in disregard of the warrant's valid portions.

15

The State failed to provide any evidence that would support a finding of admissibility under the fourth and fifth factors of the severability analysis. Without any evidence regarding what the officers were searching for at the time they discovered the methamphetamine evidence, the valid portion of the warrant cannot be severed from the invalid portion. As a result, the search warrant's overbreadth invalidates the entire search warrant. *See Perrone*, 119 Wn.2d at 556-61. Accordingly, we hold that the trial court erred in admitting the methamphetamine evidence without conducting the severability analysis.

2. Plain View Doctrine

The State argues that the correct analysis here is whether the evidence was admissible under the plain view exception to the warrant requirement, not whether it was admissible under the severability doctrine. Under the plain view doctrine, an officer must (1) have a valid justification for the intrusion into a constitutionally protected area, and (2) be immediately able to realize that an item they can see in plain view is associated with criminal activity. *State v. Weller*, 185 Wn. App. 913, 926, 344 P.3d 695, *review denied*, 183 Wn.2d 1010 (2015).

However, here the plain view analysis cannot be separated from the severability analysis. The first requirement of the plain view doctrine is that officers must be lawfully present in the area where the evidence was seized. *See id.* at 926-27. The State argues that this requirement was satisfied because the valid portion of the warrant authorized officers to search the shipping container. But officers were lawfully in the container only if the valid portions of the warrant could be severed from the invalid portions. Because we hold that the valid and invalid portions of the search warrant cannot be severed, the officers were not lawfully in the container when they discovered the methamphetamine. Therefore, the plain view doctrine is inapplicable here.

16

We hold that the trial court erred in admitting the methamphetamine evidence that officers discovered while executing a search warrant on Ring's property. Because this was the only evidence supporting Ring's conviction for possession of a controlled substance, we reverse and dismiss this conviction.

C.       INSUFFICIENT EVIDENCE OF MARKET VALUE

Ring argues that the State provided insufficient evidence that the Wacker generator's market value exceeded $5,000, which is a requirement of first degree possession of stolen property. The State concedes this issue. We accept the State's concession.

The State was required to prove that Ring possessed stolen property exceeding $5,000 in value. RCW 9A.56.150(1). "Value" means "the market value of the property or services at the time and in the approximate area of the criminal act." RCW 9A.56.010(21)(a). In Washington, market value is the price that a well-informed buyer would pay to a well-informed seller. *State v. Ehrhardt*, 167 Wn. App. 934, 944, 276 P.3d 332 (2012).

Here, the only evidence the State presented as to the value of the Wacker generator was the testimony of a shop foreman, who testified that the value of the particular type of Wacker generator was $25,000. However, the State did not produce any evidence regarding the *market* value of the generator at the time it was stolen. For example, there was no evidence about the stolen generator's age, extent of use, or condition.

We hold that the State failed to present sufficient evidence that the Wacker generator's market value exceeded $5,000, and therefore we reverse and dismiss Ring's conviction for possessing this stolen property.

D.     INSUFFICIENT EVIDENCE OF "CONCEALING" STOLEN PROPERTY

Ring argues that his first degree possession of stolen property conviction regarding the

Kubota backhoe was not supported by substantial evidence because the State failed to prove that

Ring "concealed" the backhoe.[6]  We agree.

    1.     State Assumed the Burden of Proving Alternative Means

    RCW 9A.56.150(1) defines first degree possession of stolen property:

    A person is guilty of possessing stolen property in the first degree if he or she
    possesses stolen property, other than a firearm as defined in RCW 9.41.010 or a
    motor vehicle, which exceeds five thousand dollars in value.

RCW 9A.56.140(1) defines what it means to "possess" stolen property:

    "Possessing stolen property" means knowingly to receive, retain, possess,
    conceal, or dispose of stolen property knowing that it has been stolen and to
    withhold or appropriate the same to the use of any person other than the true
    owner or person entitled thereto.

In *State v. Hayes*, Division One of this court held that the "reference to 'receive, retain, possess,

conceal, or dispose of stolen property' in RCW 9A.56.140(1) is definitional . . . [and] does not

create alternative means of a crime."[7]  164 Wn. App. 459, 477, 262 P.3d 538 (2011).  We agree

with Division One's analysis and holding in *Hayes.*

---

[6] Ring makes the same argument for his first degree possession of stolen property conviction regarding the Wacker generator.  Because we reverse this conviction below based on the State's concession, we do not address this issue.

[7] Ring cites *State v. Lillard*, 122 Wn. App. 422, 93 P.3d 969 (2004) to support his argument that possession of stolen property is an alternative means crime.  However, *Lillard* did not expressly hold that possession of stolen property in the first degree is an alternative means crime.  As discussed later in this opinion, the court in *Lillard* held that inclusion in the to-convict instruction of the means listed in the definitional statute required the State to prove those means.  *Id.* at 434-35.

However, here the to-convict jury instruction for possession of stolen property required the State to prove that Ring "knowingly received, retained, possessed, concealed stolen property." CP (case no. 46145-5-II) at 61, 63. The State did not object to this instruction. As discussed above, under the law of the case doctrine the State assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the "to-convict" instruction. *Hudlow*, 182 Wn. App. at 285.

Division One of this court addressed this situation in the context of a possession of stolen property to-convict instructions in *State v. Lillard*, 122 Wn. App. 422, 93 P.3d 969 (2004). In *Lillard*, the to-convict instructions for first degree possessing stolen property required the State to prove beyond a reasonable doubt that the defendant "knowingly received, retained, possessed, concealed, or disposed of stolen property." *Id.* at 434. The court held that because the defendant's to-convict instructions listed alternative means of possessing stolen property, the State was required to prove each of those means by sufficient evidence. *Id.* at 434-35.

The court in *Hayes* affirmed that *Lillard* stood for the proposition that "where the trial court includes 'knowingly received, retained, possessed, concealed or disposed of stolen property' in the to-convict instruction, these terms will be treated as alternative means the State must prove." 164 Wn. App. at 478-79.

Because the to-convict instructions required the State to prove that Ring concealed the stolen property, the State assumed the burden of proving Ring's concealment.

2.    Insufficient Evidence

Ring contends that the State failed to present sufficient evidence that he concealed the Kubota backhoe. The test for determining sufficiency of the evidence is whether, after viewing

19

the evidence in the light most favorable to the State, any rational trier of fact could have found the fact at issue beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In evaluating a sufficiency of the evidence claim, we assume the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id.* at 106. We defer to the trier of fact's resolution of conflicting testimony and evaluation of the persuasiveness of the evidence. *Id.*

Here, Speaks testified that the backhoe was located in his backyard. The State did not produce evidence that the backhoe was hidden, covered, physically altered, or otherwise concealed. Instead, the State argues that Ring "concealed" the backhoe by storing it on property that had no connection to him rather than storing it on his own property. Br. of Resp't at 17-18. However, the State provides no authority to support its argument. In the absence of such authority, we hold that the State did not produce sufficient evidence to prove that Ring concealed the Kubota backhoe, and therefore that Ring's conviction for possessing this stolen property must be reversed.

E.      BAIL JUMPING CONVICTIONS VIOLATE DOUBLE JEOPARDY

Ring was convicted of four counts of bail jumping based on his failure to appear for court on January 28, 2013; three counts in this case and a fourth count in a related case. He argues that his four convictions for bail jumping constitute a single unit of prosecution, and therefore his three convictions in this case violate double jeopardy. The State concedes this issue. We accept the State's concession and reverse Ring's three bail jumping convictions in this case. Ring will be punished only for the fourth bail jumping conviction in the related case.

The Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution prohibit double jeopardy. The prohibition on double jeopardy includes that a person cannot receive multiple punishments for the same offense. *State v. Villanueva–Gonzalez*, 180 Wn.2d 975, 980, 329 P.3d 78 (2014). Determining whether Ring's convictions constitute multiple punishments for the same offense requires determination of legislative intent and presents a question of statutory interpretation. *Id*. We review alleged violations of double jeopardy de novo. *Id.* at 979-80.

When a defendant has multiple convictions under the same statutory provision, as here, we apply the "unit of prosecution" analysis that asks what act or course of conduct the legislature has defined as the punishable act. *Id.* at 980-81. If the statutory language is ambiguous, we apply the rule of lenity and resolve the issue in a defendant's favor. *State v. Polk*, 187 Wn. App. 380, 389, 348 P.3d 1255 (2015). We review unit of prosecution issues on appeal de novo. *State v. O'Brien*, 164 Wn. App. 924, 928-29, 267 P.3d 422 (2011).

Under RCW9A.76.170(1):

Any person having been released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before any court of this state, or of the requirement to report to a correctional facility for service of sentence, and who fails to appear or who fails to surrender for service of sentence as required is guilty of bail jumping.

Based on the statutory language, the unit of prosecution for bail jumping could be defined as either violating the court order releasing the defendant or the defendant's failure to appear on a specific date. *O'Brien*, 164 Wn. App. at 929-30.

In *O'Brien,* the defendant was released under four court orders, in four different cases, that all required him to report to the jail on the same date and time. *Id.* at 927. The defendant failed to report to jail as ordered, and the State charged him with four counts of bail jumping. *Id.* The court observed that "the statute is ambiguous as to whether the legislature intended to punish the single failure to appear or the violations of multiple court orders." *Id.* at 929-30. Applying the rule of lenity to the specific facts of the case, the court determined that the unit of prosecution in the case was the defendant's single failure to report rather than the violation of four separate court orders. *Id.* at 930, 932.

The facts here are nearly identical to the operative facts in *O'Brien.* Ring was released under court order in four separate cases with a requirement to appear in court on January 28, 2013. He failed to report on January 28, and was charged with four counts of bail jumping under the four separate cause numbers. Applying the rule of lenity to this case, we resolve the ambiguity regarding the unit of prosecution for bail jumping in Ring's favor. Accordingly, we reverse and dismiss Ring's three bail jumping convictions appealed in this case.

F.     INEFFECTIVE ASSISTANCE OF COUNSEL

Ring asserts in his SAG that he received ineffective assistance of counsel because his attorney (1) failed to get police reports admitted into evidence because the police reports were not complete, and (2) failed to obtain a copy of a CD of evidence from the State. We hold that we cannot consider these assertions because they rely on matters outside the record.[8]

---

[8] It is unclear whether these assertions relate to Ring's forgery convictions, which we affirm, or to his other convictions, which we reverse on other grounds. However, we will address them.

22

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant's right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To prevail on such a claim, the defendant must show that, based on the record, (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced the defendant. *Id.* at 32-33.

Both of Ring's claims rely on matters outside the record. He first asserts that his attorney was unprepared and failed to get needed police report admitted into evidence because the reports were incomplete. Based on an independent review of the record, we have been unable to find evidence to support this claim. As a result, we cannot consider this claim on direct appeal. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). This claim is more properly raised in a personal restraint petition. *Id.*

Similarly, Ring argues that his attorney was ineffective because his attorney was given a blank compact disc (CD) from the State and failed to obtain the evidence on that CD. There is one potential reference to this in the record; it suggests that the State provided Ring's defense attorney with a blank CD, which purportedly was supposed to include data relating to a photograph of a FMC tire balancer machine, but was blank. Ring's defense counsel admitted that the CD was blank and that he did not have copies of a photograph of the FMC tire balancer machine.

Aside from this reference, there is no evidence in record regarding what else may have been on the CD, when Ring's defense counsel purportedly received the CD, or whether the information on the CD would have been beneficial to Ring's case. There also is insufficient evidence of this claim in the record to review it on appeal. *See McFarland*, 127 Wn.2d at 335.

46145-5 / 46155-2 / 46345-8

As a result, we cannot consider this claim on direct appeal.

We hold that Ring's ineffective assistance of counsel assertions do not support the reversal of his forgery convictions.

We affirm in part, reverse in part, and remand for resentencing.

_____
MAXA, J.

We concur:

_____
WORSWICK, P.J.

_____
SUTTON, J.